Dianne E. RIMEL, Appellee

v.

James O. RIMEL, Sr., Appellant.

Superior Court of Pennsylvania.

Argued March 16, 2006.

Filed Dec. 8, 2006.

Samuel L. Andes, Lemoyne, for appellant.

BEFORE: STEVENS, McCAFFERY, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 The issue in this divorce case is whether the trial court, in adopting the recommendation of the equitable distribution master, erred in failing to utilize a social security set-off when calculating the value of the Civil Service Retirement System ("CSRS") pension of appellant, James O. Rimel, Sr., ("Husband"). The appeal is from the order entered on March 15, 2005, in the Court of Common Pleas of Dauphin County. After careful review, we reverse and remand.

¶ 2 Husband and appellee, Dianne E. Rimel ("Wife"), were married on April 12, 1975 in York, Pennsylvania. Two children were born of this marriage, both of whom were fully emancipated by the time Wife instituted the divorce action in April 2001. During the marriage, Wife was employed by the Pennsylvania American Water Company as a cash management specialist. Husband was primarily employed as a deputy director of distribution for the United States Department of Defense. Furthermore, Husband served in the Pennsylvania Air National Guard during the marriage. Although the record is far from clear on this point, it appears that Husband also served as a municipal police officer during the early years of the marriage.

¶ 3 Important to the resolution of the present appeal is the fact that as a civil employee of the federal government, Husband did not participate in the Social Security program. However, in his employment as a police officer, in the Air National Guard, as well as in other employment prior to the marriage, Husband participated in the program, and social security deductions were withheld from his paycheck.

¶ 4 Pursuant to Wife's complaint in divorce, a hearing before an equitable distribution master was held on December 15, 2003. After receiving evidence, the master issued a report on April 14, 2004, recommending in relevant part that Husband not receive a Social Security set-off against his CSRS pension. Both Husband and Wife filed exceptions to the master's report, and on March 15, 2005, the trial court entered an order which, among other actions, affirmed the master's conclusion that Husband was not entitled to a Social Security set-off. This timely appeal followed.

¶ 5 On appeal, Husband raises a single issue for our review:

Did the trial court abuse its discretion by declining to consider that part of Husband's Civil Service Retirement System Pension benefits were "in lieu of" Social Security benefits and by failing to apply the Social Security offset to the distribution of Husband's civil service benefits at the time of his retirement?

Appellant's Brief, at 3.

¶ 6 In reviewing an award of equitable distribution, we will not reverse the trial court unless there has been an abuse of discretion. *Baker v. Baker*, 861 A.2d 298, 301–302 (Pa.Super.2004). We will only find an abuse of discretion where the trial court misapplied the law or failed to utilize proper legal procedures. *Id.*

¶ 7 Stated simply, Husband argues that the trial court erred in failing to deduct a Social Security set-off from his CSRS pension. In contrast, Wife argues, and the trial court held, that where a CSRS participant has also participated in the Social Security program, no set-off applies. Our review of the law demonstrates that this specific factual scenario has never been addressed in a published Pennsylvania appellate case. Accordingly, we will begin

our analysis by reviewing the policy concerns at stake in this appeal.

¶ 8 This Court first addressed the issue of equitably distributing a CSRS pension in *Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369 (1990), *appeal denied,* 526 Pa. 648, 585 A.2d 468 (1991). Therein, as in the present case, the husband was a member of the CSRS pension program during marriage, while his spouse, through her employment, was a participant in the Social Security program. *Id.,* 580 A.2d at 370. We noted that as a participant in CSRS, in contrast to the wife, the husband did not contribute to the Social Security program. *Id.* Under this scenario, the trial court ruled that a portion of wife's income during marriage had been diverted into a forced savings account that was exempt from equitable distribution. *Id.,* at 371–372. However, the trial court also held that all of husband's marital earnings, including his CSRS pension, were part of the marital estate and therefore subject to equitable distribution. *Id.*

¶ 9 We reversed the trial court, holding that "the exemption of [wife's Social Security] future income must be regarded as a benefit to [wife] and a detriment to [husband]." *Id.* We noted that to hold otherwise would have allowed the wife to exclusively enjoy a stream of income that was generated by marital efforts. *Id.* Therefore, we remanded in order for the trial court to discount the husband's pension by the amount he would have received in Social Security if he had not chosen to participate in the CSRS program because, if the court had not done so, equitable distribution of the marital assets could not be achieved.

¶ 10 We have had opportunities to further explain this policy:

[A] participant in CSRS is at a disadvantage "when compared to the majority of the work force" because a substantial amount of income which would be used to fund a future Social Security benefit (which would be exempt from equitable distribution), "is not similarly shielded for the CSRS participant." *Id.* at 426, 580 A.2d at 372. The *Cornbleth* court ... determined that in order to "facilitate a process of equating CSRS participants and Social Security participants," ... it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security system. This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. *Id.* at 427, 580 A.2d at 372.

*Twilla v. Twilla,* 445 Pa.Super. 86, 664 A.2d 1020, 1025 (1995).

¶ 11 As indicated in *Twilla,* we have reaffirmed the central holding of *Cornbleth* repeatedly in the intervening years. *See Cohenour v. Cohenour,* 696 A.2d 201 (Pa.Super.1997); *Schneeman v. Schneeman,* 420 Pa.Super. 65, 615 A.2d 1369 (1992); *Endy v. Endy,* 412 Pa.Super. 398, 603 A.2d 641 (1992). Nevertheless, in this case, the trial court found that the factual situation was distinguishable from *Cornbleth* and its progeny, and instead was controlled by our decisions in *Elhajj v. Elhajj,* 413 Pa.Super. 578, 605 A.2d 1268 (1992) and *McClain v. McClain,* 693 A.2d 1355 (Pa.Super.1997).

¶ 12 By returning to underlying policy that motivated our decision in *Cornbleth,* we conclude that *Elhajj* and *McClain* do not control the set-off issue presented in this case. As noted previously, the *Cornbleth* panel was motivated by the inequity created by allowing one spouse to protect an asset created by marital effort. Our late colleague, the Honorable John Brosky,

wrote in *Cornbleth* that "[o]ne of our goals with regard to equitable distribution must be to treat different individuals with differing circumstances in a fashion so as to equate them to one another as nearly as possible." *Cornbleth*, 580 A.2d at 371.

¶ 13 In *Elhajj*, by contrast, we were presented with a factual scenario where "[n]either Husband nor Wife pays social security taxes; neither Husband nor Wife is entitled to social security benefits." *Elhajj*, 605 A.2d at 1271. Accordingly, we held that no Social Security set-off was required, as neither spouse had an asset created by marital effort that was exempted from equitable distribution.

¶ 14 Similarly, in *McClain*, we were presented with a factual scenario where "[a]ny social security benefits accrued during the time [wife] was employed [were] certainly miniscule." *McClain*, 693 A.2d at 1359. As a result, we held that a Social Security set-off was not required, as Wife did not possess a significant asset created by marital effort that was meaningful for equitable distribution purposes.

█ ¶ 15 These fact patterns stand in stark contrast to the case *sub judice*. It is undisputed that Wife was employed and participated in the Social Security program during the parties' marriage.[1] This is an asset generated by marital efforts that is shielded from equitable distribution. Under *Cornbleth*, this asset must be counted as a benefit to Wife and a detriment to Husband notwithstanding the fact that

Husband also participated in Social Security through some of his other jobs. Accordingly, in order to equate the income that will be provided to the parties following divorce, Husband is entitled to a set-off against his CSRS pension. As calculation of the exact amount of the set-off requires reference to factual findings that are not currently on the record before us, including the amount of time each party earned Social Security benefits during the marriage, we remand this case for further proceedings consistent with this opinion.

¶ 16 Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

---

1. While a portion is included in the reproduced record, the entire transcript of the hearing before the master is not in the certified record. We will consider only documents which are a part of the certified record. *D'Ardenne v. Strawbridge & Clothier, Inc.*, 712 A.2d 318, 326 (Pa.Super.1998), *appeal denied*, 557 Pa. 647, 734 A.2d 394 (1998). As such, we cannot consider Wife's testimony therein that she expects to receive Social Security benefits, or the amount she expects to receive.

However, it is clear from the certified record that Wife has participated in the Social Security program. Most specifically, Wife's Income and Expense Statement indicates that FICA taxes are withheld from her paycheck. Of course, FICA taxes are part of the scheme for funding the social security program. 26 U.S.C. §§ 3101–3128; *Flemming v. Nestor*, 363 U.S. 603, 608, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).