J-A05032-18

2018 PA Super 83

| | | |
|---|---|---|
| RONALD SCHULTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SUZETTE SCHULTZ | : | |
| | : | |
| Appellant | : | No. 1055 EDA 2017 |

Appeal from the Decree March 8, 2017
In the Court of Common Pleas of Delaware County Civil Division at No(s):
No. 2010-06754

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 10, 2018**

Suzette Schultz ("Wife") appeals from the decree in divorce entered on March 8, 2017, in the Court of Common Pleas of Delaware County, related to the dissolution of her marriage to Ronald Schultz ("Husband").  The trial court entered the final decree following an order resolving the parties' economic claims, as well as an order denying Wife's outstanding petition for contempt related to the trial court's discovery order.  After a careful, we affirm.

The relevant facts and procedural history are as follows:  The parties were married on September 22, 1984, and they separated on December 2, 2009.  Trial Court Order, filed 1/26/17, at 1.  The parties have one adult emancipated daughter, and both parties are college educated.  *Id.*  Husband, who is sixty-one years old, is an executive at Cardinal Health, and Wife, who is fifty-six years old, is a project manager at Astra Zeneca.  *Id.*

_____
*   Former Justice specially assigned to the Superior Court.

On December 8, 2009, Husband filed a complaint in divorce in the Chester County Court of Common Pleas averring the parties' marriage was irretrievably broken and requesting, *inter alia*, equitable distribution of the marital estate. On January 19, 2010, Wife filed preliminary objections seeking to transfer the matter to Delaware County, which is where the marital home was located and the parties resided. By order entered on April 1, 2010, the trial court granted Wife's preliminary objections and transferred the matter to the Delaware County Court of Common Pleas.

Wife filed an affidavit indicating she was not opposed to the entry of a divorce decree, but that she sought economic relief, including equitable distribution of the marital estate and alimony. Thereafter, the trial court held numerous hearings regarding the economic claims.

At the conclusion of all testimony and evidence, the trial court entered an order on January 26, 2017, disposing of the equitable distribution claims and denying Wife's alimony claim.[1] Specifically, the trial court determined Husband's net monthly income was $15,941.00, and Wife's net monthly income was $10,409.00. Trial Court Order, filed 1/26/17, at 1. The trial court noted Wife had been receiving $2,213.00 in spousal support since 2012. *See id.* Further, after setting forth in detail the items contained in the marital

---

[1] Wife filed an appeal from the equitable distribution order; however, she subsequently withdrew the appeal.

estate, as well as the valuation for each item, the trial court directed that Wife is to receive 55% of the marital estate, while Husband is to receive 45% of the marital estate. *See id.* at 1-5. In furtherance of this division, the trial court directed the following:

1. Wife is to receive the real estate at 1 Pickering Trail, Thornton, PA.
2. Husband is to receive the real estate located in Michigan.
3. All four (4) defined benefit pension plans are to be divided by QUADRO.
4. Wife is to receive 55% and Husband is to receive 45% of the Stock Certificates held in Wells Fargo[.]
5. Husband is to retain the following automobiles:
   1. 2007 Volvo
   2. 1984 Mercedes
   3. 2006 Ford Escape
6. Wife is to retain the 2004 BMW.
7. Each party is to retain the artwork currently in their possession. Wife owes Husband $4,641.00.
8. Wife is to retain the collectibles located in the marital home.
9. Each party is to keep the household furnishings currently in their possession.
10. Cash assets are to be divided based on the values as of December 31, 2016[,] or as close thereto as possible.
11. Retirement accounts (other than defined benefit plans) are to be divided based on the values as of December 31, 2016[,] or as close thereto as possible.

*Id.* at 5. The trial court directed each party to pay their own counsel fees and directed no alimony for either party. *Id.* at 5-6.

The trial court set forth the following explanation for its distribution:

Husband's contribution during the marriage by way of salary and stock options was at time far greater than Wife's contribution. However[,] testimony also showed that Husband expended assets during the marriage which may not have been expended for the purpose of benefitting the parties but for the benefit of other persons.

It is not the role of the Court to recoup expenditures made during the marriage by one party that the other party does not know about or does not agree with, or to make a party whole again. However, it is the duty of the Court to equitably divide the marital assets.

In determining the percentage division of marital assets awarded to each party, the Court reviewed all the factors as set forth in the Statute. The Court did give considerable consideration to both the contributions of the parties, both monetary and non-monetary, and the dissipation of assets by the parties.

In addition, the Court is not awarding any division of the following as marital property. Instead, the Court considered the following along with other items and testimony when determining the percentage of the marital assets to award to each party.

1. 310 W. Broad Street

   4542 Game Preserve Road

   Except for funds deposited into joint account when property sold

2. Missing artwork-no evidence presented as to what was missing or its value

3. LEH Preservation book-$100,000.00 investment by Husband

4. Monies used by Husband during course of marriage

5. Tuition paid for daughter by Wife

6. Expenses for House paid by Wife while residing there[.]

*Id.* at 6-7.

Moreover, as there was an outstanding petition for contempt filed by Wife regarding a discovery order entered in this case,[2] the trial court issued an order denying Wife's contempt petition. Wife filed motions for reconsideration of the trial court's January 26, 2017, equitable distribution order, as well as the order relating to the denial of her contempt petition. By order entered on February 22, 2017, the trial court denied Wife's motions for reconsideration. The trial court entered a final divorce decree on March 8, 2017, and Wife filed a notice of appeal on March 23, 2017. By order entered on March 29, 2017, the trial court directed Wife to file a Pa.R.A.P. 1925(b) statement, Wife timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion on July 7, 2017.

On appeal, Wife presents the following issues for our review:

1. In fashioning the equitable distribution award, did the trial court err by failing properly to apply the factors outlined in 23 Pa.C.S.[A.] § 3502 to divide the marital estate in an equitable manner and to give a reasoned explanation for that division, as required by 23 Pa.C.S.[A.] § 3506?

2. In its division of marital property, did the trial court err by failing to give any consideration to Wife's evidence that Husband dissipated $4.4M of marital property?

3. Did the trial court erroneously neglect to divide the artwork acquired during the marriage?

4. Did the trial court err by assigning a value to Wife's 401(k) without the benefit of any expert opinion?

---

[2] Specifically, on February 10, 2014, Wife filed a petition for contempt averring that Husband had not complied with the trial court's May 16, 2013, discovery order.

5. Did the trial court erroneously hold that a severance payment made prior to separation was not marital property?

6. Did the trial court make various errors in its valuation of bank and brokerage accounts and erroneously ignore stipulations as to the value of these and other items of personality?

7. Did the trial court err when it failed to award alimony to Wife?

8. Did the trial court err when it denied Wife's claim for counsel fees?

9. Did the trial court err by failing to find Husband in contempt of the May 16, 2013[,] Order?

Wife's Brief at 13-14.

Initially, as Wife's issues one through six relate to the trial court's equitable distribution order, we note the following relevant legal precepts.

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017) (internal citations, quotation marks, and quotation omitted). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and this Court

will not reverse those determinations as long as they are supported by the evidence. ***Sternlicht v. Sternlicht***, 822 A.2d 732, 742 (Pa.Super. 2003).

In her first issue, Wife claims that, in fashioning the equitable distribution award, the trial court erred by failing properly to apply the factors outlined in 23 Pa.C.S.A. § 3502(a)[3] to divide the marital estate in an equitable

---

[3] 23 Pa.C.S.A. § 3502(a), relating to the equitable division of marital property, provides the following:

**(a) General rule.--**Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.
(2) Any prior marriage of either party.
(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
(4) The contribution by one party to the education, training or increased earning power of the other party.
(5) The opportunity of each party for future acquisitions of capital assets and income.
(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.
(8) The value of the property set apart to each party.
(9) The standard of living of the parties established during the marriage.

manner and failing to give a reasoned explanation for its division, as required

by 23 Pa.C.S.A. § 3506.[4]  Specifically, Wife alleges:

> The trial judge provided no explanation for the 55%/45% division of the marital property.  Neither her Order nor her Opinion demonstrates that she considered or weighed the factors.  If she did, she did not identify the weight and/or significance she gave to each and how she synthesized the results and arrived at the split.  At the very least, this Court should remand the case and order that [the trial judge] provide some explanation for her 55%/45% division of the marital property.

Wife's Brief at 34 (footnote and citation omitted).

In support of her argument, Wife cites to **Powell v. Powell**, 577 A.2d

576 (Pa.Super. 1990), in which this Court held the trial court must not

_____

> (10) The economic circumstances of each party at the time the division of property is to become effective.
> (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
> (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
> (11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).  We note that this list is not exhaustive, there is no simple formula by which to divide marital property, and the list of factors in Section 3502 serve as a guideline for consideration by the trial court.  **See Ressler v. Ressler**, 644 A.2d 753 (Pa.Super. 1994).

[4] Pertaining to the statement of the reasons for the distribution, the Divorce Code relevantly provides that "[i]n an order made under this chapter for the distribution of property, the court shall set forth the percentage of distribution for each marital asset or group of assets and the reason for the distribution ordered."  23 Pa.C.S.A. § 3506.

presume a 50/50 distribution, but must examine the factors set forth in Section 3502(a).

In the case *sub judice*, the trial court specifically stated that "[i]n determining the percentage division of marital assets awarded to each party, the Court reviewed all the factors as set forth in the Statute." Trial Court Order, filed 1/26/17, at 6. After a careful review, we find no indication the trial court improperly presumed a 50/50 split; but rather, the trial court carefully examined the appropriate factors under Section 3502(a), as well as set forth the reasons for the distribution as directed by Section 3506. **See id.** at 1-7. Without additional development of the argument by Wife, we decline to address the issue further and conclude she is not entitled to relief.

In her second issue, Wife claims that, in fashioning its equitable distribution order, the trial court erred in failing to give any consideration to Wife's evidence that Husband dissipated $4.4M of the marital estate. Specifically, Wife contends Husband dissipated the marital funds "by giving it to or using it for the benefit of paramours with whom [he was] involved in extra-marital affairs." Wife's Brief at 37 (citations omitted). In furtherance of her argument, Wife sets forth various purchases and expenditures allegedly made by Husband, which she claims were made for the benefit of Husband's "presumptive paramour-Evelyn Beckman," as well as Husband's "admitted paramour-Barbara G. Smith," and she suggests the trial court wholly failed to

consider these purchases/expenditures in fashioning its equitable distribution order. *Id.* at 38-41. We find no merit to Wife's issue.

In its January 26, 2017, order, the trial court specifically indicated:

> Husband expended assets during the marriage which may not have been expended for the purpose of benefitting the parties but for the benefit of other persons.
>
> It is not the role of the Court to recoup expenditures made during the marriage by one party that the other party does not know about or does not agree with, or to make a party whole again. However, it is the duty of the Court to equitably divide the marital assets.

Trial Court Order, filed 1/26/17, at 6. Further, the trial court specifically indicated that, in dividing the marital assets, it gave "considerable consideration" to "the dissipation of assets[.]" *Id.* Moreover, the trial court indicated that, in determining the percentage of the marital assets to award to each party, it considered the "[m]onies used by Husband during course of marriage[.]" *Id.*

Further, to the extent Wife presented the issue in her Rule 1925(b) statement,[5] the trial court relevantly responded that "[i]n this case, hundreds

---

[5] The majority of Wife's allegation that Husband dissipated $4.4M in favor of his paramours relates to alleged expenditures made by Husband with regard to Ms. Beckman, who Wife argued is Husband's "presumptive paramour." Wife's Brief at 38-39. However, in her court-ordered Pa.R.A.P. 1925(b) statement, Wife presented no specific issue as it relates to Husband's alleged dissipation of funds in favor of Ms. Beckman. For instance, in her Pa.R.A.P. 1925(b) statement, Wife alleged the "trial court abused its discretion by failing to: . . .address the $87,750.00 that Husband removed from marital accounts and gave to his paramour, Barbara Smith. . .[or] take into account the

- 10 -

of documents were entered into evidence and days upon days of testimony presented for consideration by the trial court. . . .All the evidence and testimony was considered by the trial court when deciding the equitable distribution order in this matter." Trial Court Opinion, filed 7/7/17, at 21. Accordingly, we find Wife is not entitled to relief.

In her third issue, Wife claims the trial court erred in neglecting to divide the artwork acquired by the parties during the marriage pursuant to the parties' stipulated gross values. Wife avers the trial court erred in failing to set values for the artwork or fashioning an appropriate division thereof. Wife's Brief at 48-49. Accordingly, she requests this Court "remand for a distribution of the artwork." *Id.* at 49.

Initially, we note that the issue as phrased by Wife on appeal is different from her issue as presented in her court-ordered Pa.R.A.P. 1925(b) statement. Specifically, in her Rule 1925(b) statement, Wife averred the following as it related to the artwork:

<u>**Valuation Errors**</u>
<u>**Artwork**</u>
1. The trial court made an error and/or abused its discretion by:

---

furniture that Husband gifted to his paramour and her children. . .[or] take into account the monies Husband invested in the Leh Book Deal." Wife's Pa.R.A.P. 1925(b) Statement, filed 4/19/17. However, she does not present a specific issue identifying Ms. Beckman as Husband's "presumptive paramour" or Husband's dissipation of marital funds in furtherance of the relationship.

- 11 -

a. holding the artwork that it awarded to Wife was worth $52,505.00.

b. holding that the artwork awarded to Husband was worth $440,845.00.

c. using these figures and charging them to each respective party in reaching its conclusion that it had generated a 55%/45% split of the marital estate to Wife/Husband.

Wife's Pa.R.A.P. 1925(b) Statement, filed 4/19/17 (emphasis in original).

In addressing Wife's claim as presented in her Rule 1925(b) statement, the trial court indicated:

> [Wife] also complains that the trial court did not appropriately divide the parties' artwork. The trial court, however, divided the artwork in accordance with the parties' stipulation, which was placed on [the] record in open court. Specifically, the parties accepted the appraisals submitted by each expert and a value was assigned based upon these appraisals although not included in the order itelf.[1] However, for purposes of dividing the marital estate, the value of Husband's artwork was $440,845 (N.T., 8/22/16, at 108) and Wife's appraiser set the value of Wife's artwork at $52,505. (N.T., 4/27/15, at 32).
>
> [1]This was an omission by the trial court not to include the values of the artwork; however, [Wife] has failed to raise this specific issue on appeal and has therefore waived this.

Trial Court Opinion, filed 7/7/17, at 7.

Seizing upon the trial court's acknowledgment in its Rule 1925(a) opinion that the trial court had omitted from its order the values for the artwork, Wife now claims, for the first time, that the trial court erred in failing to set values for the artwork. However, this specific claim is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not

raised in accordance with the provisions of this paragraph (b)(4) are waived.").

In any event, the record reflects Wife and Husband stipulated at trial they would each retain the artwork in their possession and Wife would pay Husband $4,631.00 for an appraisal. This stipulation is reflected in the trial court's order in which it specifically listed as a marital asset: "Artwork-Various paintings held by each party-Stipulation that Wife owes Husband $4,641.00[.]" Trial Court Order, filed 1/26/17, at 2. Further, the trial court directed "[e]ach party is to retain the artwork currently in their possession. Wife owes Husband $4,641.00." *Id.* at 5. Thus, we find Wife is not entitled to relief.

In her fourth issue, Wife claims the trial court erred in assigning a value to Wife's 401(k) without the benefit of an expert's opinion. In this regard, Wife contends that, after the trial court indicated the court would not accept Wife's expert's report, the trial court erred in denying Wife's request for permission to supplement the record with a revised report from her existing expert or a new expert. *See* Wife's Brief at 53. Alternatively, she contends the trial court should have "hired a court-appointed expert to perform the appropriate calculations." *Id.* at 55. Further, she contends the trial court's conclusion that the entirety of her 401(k), valued at $959,376.00, constitutes marital property is not supported by adequate evidence in the record. *See id.*

Initially, we note that, in her court-ordered Pa.R.A.P. 1925(b) statement, as it related to her 401(k), Wife presented the following issue:

The trial court incorrectly evaluated Wife's Astra Zeneca 401(k). The Court held that the fund was worth $959,376. It erred and abused its discretion by including post-separation figures in valuing Wife's 401(k). It reached said evaluation of the Astra Zeneca 401(k) without any documentation, evidence or testimony.

Wife's Pa.R.A.P. 1925(b) Statement.

As is evident, Wife did not allege in her court-ordered Pa.R.A.P. 1925(b) statement that the trial court erred in denying her request for permission to supplement the record with a revised expert report or that the trial court should have appointed an expert. Accordingly, we decline to address these specific issues further. *See* Pa.R.A.P. 1925(b)(4)(vii).

Regarding Wife's contention the record does not support the trial court's inclusion of the entirely of her 401(k) as marital property (valued at $959,376.00) the trial court relevantly explained in its Rule 1925(a) opinion that Wife presented an expert witness, William Troyan. However, Mr. Troyan admitted his reports were erroneous, N.T., 1/15/17, at 33, and Wife's counsel acknowledged this fact as well. N.T., 1/15/17, at 50. Despite being warned that "Mr. Troyan's report could not be accepted as evidence," Wife offered no evidence to establish that any portion of her 401(k) was non-marital property. Trial Court Opinion, filed 7/7/17, at 8-10. Accordingly, the trial court accepted Husband's contention that the entirety of the 401(k), valued at $959,376.00,

constituted marital property. We find no abuse of discretion in this regard. ***See Carney***, ***supra***.

In her fifth issue, Wife claims the trial court erred in holding that a $218,673.00 severance payment made to Husband by his former employer, Teva Pharmaceutical Company, was not marital property. Specifically, Wife contends the severance payment was made to Husband prior to the date of the parties' separation and, further, that the date of payment is dispositive of the issue such that there is no need to determine the reason for the payment.

In addressing Wife's issue, the trial court relevantly indicated the following:

> [Wife] complains that the trial court did not include [Husband's] severance check as part of the marital estate for distribution. [Husband,] however, produced competent evidence that the severance check was not for past services which occurred during the marriage but for a non-compete clause for twelve (12) months moving forward post 2009. (N.T., 8/22/17, at 171). The trial court accepted the evidence presented that established that the severance was paid to [Husband] in exchange for his non-competition with his former employer, Teva Pharmaceuticals. The trial court did not, therefore, abuse its discretion or err when deciding that the severance was executed in exchange for future restraint on employment and was not paid for past services rendered [such that it did not constitute marital property].

Trial Court Opinion, filed 7/7/17, at 19.

We agree with the trial court's sound reasoning. Initially, contrary to Wife's assertion, the trial court determined the parties separated on December 2, 2009 (and not December 8, 2009). ***See*** Trial Court Order, filed 1/26/17,

at 1; Wife's Brief at 57. Husband received the severance payment on December 4, 2009.

As to the nature of the payment, the severance agreement sets forth the payment was in exchange for Husband's agreement not to compete with Teva Pharmaceuticals for twelve months following the termination of his employment on December 31, 2009. Thus, pursuant to the Divorce Code, the severance payment did not constitute marital property. *See* 23 Pa.C.S.A. § 3501 ("[M]arital property does not include. . .(8) Any payment received as a result of an award or settlement for any cause of action or claim which accrued. . . after the date of final separation regardless of when the payment was received."); *Berry v. Berry*, 898 A.2d 1100, 1105-06 (Pa.Super. 2006) (in determining whether severance pay is marital property the court must determine whether the pay was intended to compensate the employee for efforts made during the marriage or to replace post-separation earnings; in the latter situation, it is not marital property). Accordingly, we find no abuse of discretion. *Carney*, *supra*.

In her sixth issue, Wife claims the trial court erred in its valuation of the bank and brokerage accounts, and further, erred in failing to accept the parties' stipulation of value as to various assets. Specifically, Wife claims (1) the parties stipulated the value of Husband's three retirement accounts (T. Rowe Price Account ending 6042, Merrill Lynch Account ending 0655, and Merrill Lynch Account ending 0015), was valued at $1,073,968.39; however,

the trial court simply indicated "Merrill Lynch #0015, All marital at $806,761.00;" (2) the trial court erred in omitting as marital property a National Penn IRA (Acct. # 6802, now 4022), which the parties stipulated was worth $24,452.95; (3) the trial court failed to credit the parties' stipulation that the 2007 Volvo was worth $5,875.00, thus erring in valuing the car at $4,875.00; and (4) the trial court failed to credit the parties' stipulation that the Mercedes Benz was worth $8,250.00, thus erring in valuing the car at $8,000.00. Wife's Brief at 60-61.

Initially, we note that, in her court-ordered Rule 1925(b) statement, with regard to bank and brokerage accounts, Wife indicated the following:

**Valuation Errors**

**Bank Accounts**

5. The trial court made an error and/or abused its discretion by:

a. incorrectly stating the value of the Merrill Lynch account owned by the parties with an account number ending in numbers 1080.

b. incorrectly stating the value of the Bank of America account owned by the parties with an account number ending in numbers 4842.

c. incorrectly stating the value of the National Penn Bank account owned by the parties with an account number ending in numbers 1820.

Wife's Pa.R.A.P. 1925(b) Statement, filed 4/19/17 (emphasis in original).

However, on appeal, Wife challenges the valuation of Husband's three retirement accounts: T. Rowe Price Account ending 6042, Merrill Lynch Account ending 0655, and Merrill Lynch Account ending 0015. Wife's Brief at

59-60. She also challenges the trial court's alleged omission of the National Penn IRA (Acct. # 6802, now 4022) as a marital asset.[6] *Id.* at 60. As is evident, Wife did not present these specific issues in her court-ordered Rule 1925(b) statement, and accordingly, we decline to address the issues further. *See* Pa.R.A.P. 1925(b)(4)(vii).

As it relates to the valuation of the 2007 Volvo, Wife asserts the trial court "failed to credit the parties' stipulation that the 2007 Volvo was worth $5,875.[00]; [but rather,] it valued the vehicle at $4,875.[00]." Wife's Brief at 60. Wife is mistaken in this regard. In its January 26, 2017, order, the trial court specifically listed: "2007 Volvo-$5,875.00." Trial Court Order, filed 1/26/17, at 2.

With regard to the trial court's valuation of the Mercedes Benz, Wife is correct that the trial court valued it at $8,000.00. *See id.* However, we find no abuse of discretion in this regard. While Wife argues the value of the Mercedes Benz was stipulated to be $8,250.00, the trial court indicated at trial "[i]t looks like there was a stipulation, 8,000--." N.T., 8/22/16, at 215. In any event, the record reveals that, in reviewing the list of assets, Wife argued the Mercedes Benz was a "classic car," while Husband argued it was "an old car." *Id.* at 214. The trial court was permitted to take this into consideration

---

[6] We note Wife is mistaken in her assertion. The trial court specifically listed "National Penn #6802-All marital" in its January 26, 2017 order. Trial Court Order, filed 1/26/17, at 2.

in valuing the asset. *See Morgante v. Morgante*, 119 A.3d 382, 391 (Pa.Super. 2015) (holding the trial court's equitable distribution order should be upheld where it "effectuates economic justice between the parties and achieves a just determination of their property rights") (citation omitted)).

In her seventh issue, Wife claims the trial court erred in failing to award her alimony. More specifically, Wife contends that a proper analysis of the statutory factors set forth in 23 Pa.C.S.A. § 3701(b), which the trial court failed to analyze, reveals the trial court abused its discretion in awarding her alimony.

Initially, we note:

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa.Super. 2004) (citation and internal quotation marks omitted).

In general, the court may award alimony, as it deems reasonable, to either party only if it finds that alimony is necessary. 23 Pa.C.S.A. § 3701(a). In determining whether alimony is necessary and in determining the nature,

- 19 -

amount, duration, and manner of payment of alimony, the trial court shall consider all relevant factors, including those listed in 23 Pa.C.S.A. § 3701(b). The relevant statutorily-mandated factors to determine whether alimony is necessary include the following: the relevant earnings and earning capacities of the parties; the ages and physical conditions of the parties; the sources of income of both parties; the duration of the marriage; the standard of living the parties established during the marriage; the relative assets and liabilities of the parties; the relative needs of the parties; and the marital misconduct of the parties. *See* 23 Pa.C.S.A. § 3701(b). We note that the factors in Section 3701(b) do not create an exhaustive list. *Ressler*, *supra*. In fact, the trial court should also consider the assets the petitioning spouse received in equitable distribution. *Id.*

Here, regarding the Section 3701 factors, the trial court made the following findings. Husband is sixty-one years old, and Wife is fifty-six years old. Trial Court Order, filed 1/26/17, at 1. The parties were married for twenty-five years, and both are employed in the pharmaceutical field. *Id.* The trial court determined Husband's net monthly income was $15,941.00, while Wife's monthly net income was $10,409.00. *Id.* The trial court considered that Husband contributed monetarily to the marriage to a degree greater than that of Wife; however, the trial court also considered that Husband expended assets to a greater degree. *Id.* at 6.

In its opinion, after setting forth the Section 3701(b) factors, the trial court found that Wife "is in good health and has many employable years ahead of her." Trial Court Opinion, filed 7/7/17, at 13. Further, the trial court noted that it found much of Wife's testimony concerning her monthly expenses to be incredible. *Id.* at 12. In any event, the trial court concluded that "even if the trial court accepted as true all the expenses [Wife] alleges as reasonable, which the trial court did not, [Wife] has enough net monthly income to cover her monthly expenses in total without need for assistance from Husband." *Id.* at 14.

Additionally, the trial court indicated:

[T]he trial court as part of its equitable distribution order divided an estate worth over $7 million not including certain pension benefits that are to be QDRO'ed, giving [Wife] fifty-five percent (55%). The trial court found that [Wife's] reasonable needs would be met with her current net income and her share of the marital estate, which is in excess of $3.8 million excluding the aforesaid pensions. Furthermore, the trial court finds awarding [Wife] alimony would be inappropriate given the income of the parties and the value of the marital estate.

In the instant matter, after equitable distribution, [Wife] will have sufficient income and assets to provide for her current lifestyle. Therefore, the trial court, having made such finding[,] did not award [Wife] alimony.

*Id.* at 15.

In light of the aforementioned, we conclude the trial court did not err in denying Wife's request for alimony. Specifically, in light of its consideration of the relevant statutory factors and the assets Wife received in equitable

distribution, the trial court "effectuated economic justice." ***See Teodorski***, ***supra***.

In her eighth issue, Wife claims the trial court erred in denying her request for counsel fees. Specifically, Wife contends the trial court should have awarded her counsel fees since Husband resisted discovery, thus causing Wife to expend "unnecessary legal resources." ***Id.*** at 73.

Reasonable counsel fees may be awarded in divorce proceedings under 23 Pa.C.S.A. § 3702. With regard to petitions filed under Section 3702:

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

***Teodorski***, 857 A.2d at 201. In determining whether the trial court has abused its discretion, we do not usurp the trial court's duty as fact finder. ***Id.***

In explaining the reasons it denied Wife's request for counsel fees, the trial court indicated the following:

> [Wife] requested reimbursement from [Husband] for the legal fees expended, not only in the divorce action but several other actions, separate and apart from the divorce. (N.T., 1/14/17, at 106). These charges included payment by [Wife] to an attorney to review a judicial conduct complaint [Wife] filed against a visiting judge, the Honorable John Braxton, who was assigned the discovery portion of the equitable distribution case.

> They also included a request for reimbursement for an $800.00 sanction assessed against [Wife's] then counsel and reimbursement for attorney's fees that [Wife] was court ordered to pay [Husband's] then counsel following a Protection from Abuse action, where [Wife] had put a GPS tracker on [Husband's] vehicle. (N.T., 1/14/16, at 115-16). [Wife] also admitted to including a $7,500.00 bill without knowing what it was for. (N.T. 1/14/17, at 129).
>
> Counsel fees are [generally] awarded in divorce actions [ ] upon a showing of need. The purpose of an award of counsel fees is to "promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage." Furthermore, counsel fees are awarded in divorce actions, based "on the facts of each case after a review of all relevant factors, which include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution."
>
> The trial court found that based on [Wife's] income and her share of the marital estate, [Wife] would not be at a financial disadvantage and could pay her own counsel fees.

Trial Court Opinion, filed 7/7/17, at 21-22 (citation, quotations, and footnote omitted).

Under the facts of this case, we cannot find that the trial court abused its discretion and thus, given our standard of review, we must affirm the denial of counsel fees. ***Teodorski***, ***supra***. The trial court considered the financial resources of each party and found Wife's request for counsel fees was not reasonable. Further, while this Court has acknowledged counsel fees may be awarded under Section 3702 where one spouse's conduct results in protracted litigation, Wife has not demonstrated that such occurred in this case. ***See Busse v. Busse***, 921 A.2d 1248 (Pa.Super. 2007).

In her final issue, Wife claims the trial court erred in failing to find Husband in contempt of the May 16, 2013, order. Specifically, Wife contends "[t]his Court should overturn the [trial] court's refusal to find Husband in contempt of its May 16, 2013, order because its ruling flowed from its erroneous decision that Husband's siphoning of $4.4 million in marital assets did not constitute a dissipation of assets within the meaning of 23 Pa.C.S.[A.] § 3502(a)(7)." Wife's Brief at 78. Further, she contends that, to the extent the trial court "castigated Wife's counsel" for "abusing the discovery process[,]" the trial court's finding "is simply not true." *Id.* at 79.

Initially, we note that we review the trial court's decision on Wife's contempt petition for a clear abuse of discretion. *Flannery v. Iberti*, 763 A.2d 927 (Pa.Super. 2000). "This Court will reverse a trial court's order denying a [ ] contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason." *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa.Super. 2012). Thus, "even where the facts could support an opposite result,. . .we must defer to the trial [court] so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion." *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817, 826–27 (2012). Moreover, we defer to the trial court's credibility determinations with respect to witnesses who have appeared before it because

that court has had the opportunity to observe their demeanor. ***Habjan v.***

***Habjan***, 73 A.3d 630, 644 (Pa.Super. 2013).

In addressing Wife's claim, the trial court provided the following

rationale for its denial of Wife's petition for contempt:

> On or about May 16, 2013, the Honorable John L. Braxton entered an order which [directed], in pertinent part, that [Wife] produce a list to [Husband] of all outstanding discovery and information sought and that [Husband] would have twenty (20) days from receipt to produce the requested information, imposing a daily penalty for noncompliance. On [ ] February 10, 2014, [Wife] filed a "Motion for Contempt of Order of May 16, 2013 and for Injunctive Relief to Prevent Sale/Dissipation of Marital Assets.". . .[Husband] filed a response thereto. . . outlining the ways [he] was complaint [*sic*] with the trial court's May 16, 2013[,] order.

> The trial court held a hearing on [Wife's] petition for contempt on [ ] September 16, 201[6], which the trial court permitted to continue until completion at 7:00 P.M. During the extended hearing, the trial court patiently listened to testimony on 134 items requested by [Wife] in discovery. As the testimony ensued[,] however, it became clear that [Wife's] extended use of discovery was a flagrant abuse of the discovery process with [Wife's] requests intended to harass [Husband] rather than gather pertinent information. For example, [Wife] testified that she removed stacks of documents from [Husband's] car trunk and found a "Bill of Sale" for a vehicle. [Wife], in spite of knowing the exact price the vehicle was purchased for, proceeded to send discovery to [Husband] requesting all documents relating to the vehicle's purchase. Counsel for [Wife]. . .was outraged that in response to this discovery request, she received a reference to the "Bill of Sale" she had submitted earlier in one of the many proceedings as evidence. Counsel for [Wife] indicated that[,] although [Wife] had broken into [Husband's] vehicle and removed documents, which [Wife] now retained possession of, [Husband] should be forced to go to the car dealership to regather information she already had [in her possession].

> [Wife] likewise claimed [Husband] was in contempt merely because she did not like his responses to Interrogatories. For example, for several bank accounts, [Wife] requested "withdrawal

and deposit information," for which [Husband] produced bank statements which included deposits and withdrawals. At the hearing, which occurred on September 16, 2016[,] [Wife] demanded [Husband] produce the actual withdrawal and deposit slips submitted to the bank in spite of the fact that her vaguely worded request did not specify this was the information sought. [Wife] also claimed [Husband] was in contempt when he did not produce documents [Husband] testified simply did not exist, such as a rental agreement for a property and [an] employment contract with Evelyn Beckman. Although the trial court attempted to explain that[,] although Wife may not like the answer, [Husband's] answer was a response to the questions, neither [Wife] nor [her] counsel seemed to grasp this [concept]. [Wife] further testified that she was able to get some bank statements herself with a previous court order; however, and in spite of the fact that she now had this information, continued to request [that Husband] produce it. [Wife] claimed [Husband] was in contempt for not producing bank statements for banks that no longer existed and likewise testified that she herself had difficulty getting some documentation even with a court order that permitted her access.

[Husband] testified that when he received the 134 items requested he attempted to schedule an administrative conference but [Wife's counsel] objected to this request. [Husband] then testified that he, within twenty (20) days[,] complied with the request and supplemented the response when additional information became available.

\*\*\*

In the instant matter, the trial court found that [Wife] was abusing the discovery process by filing a contempt petition against [Husband] and seeking information and documents[,] many of which were already in her possession. It is unimaginable how the discovery process can be abused more than taking documents from [Husband] and turning around and requesting production of these same documents. Further, [Husband] timely and substantially complied with the requests, even with the short timeframe allotted. The trial court, therefore, found that [Husband] substantially complied with the exhaustive discovery request and properly entered an order. . .denying [Wife's] petition for contempt.

Trial Court Opinion, filed 7/7/17, 23-26.

Applying the appropriate standard of review, we find no abuse of discretion. **MacDougall**, **supra**. We conclude the record supports the trial court's factual findings, and further, we remind Wife that, under our standard of review, we defer to the trial court's credibility determinations. **Habjan**, **supra**. To the extent Wife claims the trial court's denial of Wife's petition for contempt was based on the court's "erroneous decision that Husband's siphoning of $4.4 million in marital assets did not constitute a dissipation of assets within the meaning of 23 Pa.C.S.[A.] § 3502(a)(7)," we find no merit to her contention. As is evident, the trial court denied Wife's petition for contempt on the basis that Wife failed to demonstrate that Husband did not comply with the trial court's May 16, 2013, discovery order. Thus, Wife is not entitled to relief on this claim.[7] **See Gunther v. Bolus**, 853 A.2d 1014 (Pa.Super. 2004) (setting forth the relevant elements for contempt).

_____

[7] In his appellate brief, Husband requests that we impose counsel fees upon Wife in connection with her pursuit of the instant appeal. Pa.R.A.P. 2744 provides, in relevant part, that this Court may impose reasonable counsel fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate, or vexatious." Pa.R.A.P. 2744. Husband avers Wife's instant appeal is frivolous and, as evident by the number of issues she raised, grounded in bad faith. **See** Husband's Brief at 41. While we conclude Wife is not entitled to relief on appeal, we disagree with Husband that her appeal has no basis in law or fact such that it may be deemed "frivolous" under Pa.R.A.P. 2744. **See U.S. Claims, Inc. v. Dougherty**, 914 A.2d 874, 878 (Pa.Super. 2006) ("In determining the propriety of [ ] an award [under Rule 2744], we are ever guided by the principle that an appeal is not frivolous simply because it lacks merit[;][r]ather, it must be found that the appeal has no basis in law or fact.") (quotation marks and quotation omitted)). Further, we disagree

For all of the foregoing reasons, we find Wife is not entitled to relief. Accordingly, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/18

---

with Husband that the number of issues raised by Wife is, by itself, evidence of Wife being "dilatory, obdurate, or vexatious." **See** Pa.R.A.P. 2744. Accordingly, we decline to order Wife to pay counsel fees under Pa.R.A.P. 2744.